# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50818

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2014

Lyle W. Cayce
Clerk

JOHN F. SVOBODA; RITA A. SVOBODA,

Plaintiffs–Appellants

v.

BANK OF AMERICA, N.A., Successor by Merger to BAC Home Loans Servicing L.P. for the Benefit of J.P. Morgan Alternative Loan 2006-S3, its Successors and/or Assigns; RECONTRUST COMPANY, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED; SECURITY NATIONAL MORTGAGE COMPANY,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:12-CV-484

Before SMITH, WIENER, and PRADO, Circuit Judges.

PER CURIAM:*

Plaintiffs–Appellants John F. Svoboda and Rita A. Svoboda (collectively "the Svobodas") filed several state-law claims against Defendants–Appellees Bank of America, N.A. ("Bank of America"), Recontrust Company, N.A., Mortgage Electronic Registration Systems, Inc. ("MERS"), and Security

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50818

National Mortgage Company (the "Lender") (collectively "Appellees"). After Bank of America removed the case to federal court, the district court granted Bank of America's motion for summary judgment. On appeal, the Svobodas contend that Bank of America lacked the right to foreclose on their property. We affirm.

## I. BACKGROUND

In May 2006, the Svobodas obtained a loan for $560,000 secured by a deed of trust encumbering their real property at 10 Mira Loma in New Braunfels, Texas. The Svobodas executed a promissory note and the deed of trust, both of which identified Security National Mortgage Company as the lender. The deed of trust also listed MERS as "beneficiary" and "nominee for Lender and Lender's successors and assigns," and specified that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property."

The Svobodas defaulted on their loan in 2010. In May 2011, MERS assigned the deed of trust to BAC Home Loans Servicing, LP ("BAC"). The assignment gave BAC "all beneficial interest under that certain Deed of Trust . . . together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust." After Bank of America acquired BAC by merger later in 2011, BAC assigned the deed of trust to Bank of America for the benefit of JP Morgan Alternative Loan Trust 2006-S3 ("the Trust").

The Svobodas failed to cure their default, so Bank of America accelerated the loan and initiated foreclosure proceedings. In its letter notifying the Svobodas of its decision to foreclose, Bank of America identified itself as both the "Mortgage Servicer" under Texas Property Code § 51.0025 and the

2

No. 13-50818

"Mortgagee."[1]  That notice of substitute trustee further identified Bank of America as the mortgagee under deed of trust.  At the foreclosure auction on February 7, 2012, Bank of America purchased the Svobodas' 10 Mira Loma property.

The Svobodas filed suit in state court in May 2012, asserting a claim for wrongful foreclosure and an action to quiet title.  They also alleged violations of the Texas Property Code, the Texas Business and Commerce Code, and the Texas Debt Collection Act, and sought a temporary injunction and declaratory relief as well.

The Appellees removed the case to federal district court.  After the opposing parties filed cross-motions for summary judgment, the district court rendered judgment for the Appellees, and the Svobodas timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court had diversity jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.  We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the non-movant.  *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.  DISCUSSION

On appeal, the Svobodas assert two claims.  They first contend that Bank of America lacked authority to foreclose because the transfer of the Svobodas'

---

[1] "Though a deed of trust is formally distinct from a mortgage, Texas courts tend to use the two terms interchangeably.  For purposes of this appeal, we do the same." *Reinagel v. Deutsche Bank Nat'l Trust Co.* 735 F.3d 220, 220 n.1 (5th Cir. 2013).

mortgage to the Trust violated the terms of the Trust's Pooling and Servicing Agreement ("PSA"). Second, they assert that, to foreclose, Bank of America had to possess the note; because Bank of America did not own or hold the note, it could not foreclose under the deed of trust. We address each claim in turn.

## A. Alleged Improper Transfer under the PSA

The Svobodas allege that the transfer of their mortgage to the Trust was improper because it violated several terms of the PSA. They claim that these violations void the transfer of their mortgage, so that Bank of America has no authority to foreclose on their loan.

We disagree. The Svobodas cannot challenge Bank of America's authority to foreclose based on the alleged violations of the PSA. In *Reinagel v. Deutsche Bank National Trust Co.*, 735 F.3d 220 (5th Cir. 2013), we considered whether borrowers have standing under Texas law to challenge the transfer of their mortgage to a trust because the transfer allegedly violated the PSA. The borrowers in *Reinagel* argued that the transfer of their mortgage violated the PSA because it took place after the closing date specified in the PSA. *Id.* at 228. We concluded that, as the borrowers were "not [parties] to the PSA, they [had] no right to enforce its terms because they [were] its intended third-party beneficiaries." *Id.* The borrowers had not alleged any facts showing that they were intended third-party beneficiaries of the PSA. *Id.* Further, even if the borrowers had been third-party beneficiaries, that status would only have given them the right to sue for breach of the PSA; it would not automatically render the assignments void. *Id.*

Like the borrowers in *Reinagel*, the Svobodas cannot challenge the transfer of their mortgage to the trust based on alleged violations of the PSA unless they are third-party beneficiaries. They have not claimed that they are third-party beneficiaries; even if they had, that "would not render the

assignments void, but merely entitle [the Svobodas] to sue for breach of the PSA." *See id.*

The Svobodas attempt to circumvent our holding in *Reinagel* by invoking New York law. They point out that the PSA specifically provides that it will be construed in accordance with New York law. Under New York trust law, "every . . . act of the trustee in contravention of the trust . . . is void." N.Y. Est. Powers & Trusts Law § 7-2.4; and *Reinagel* specified that obligors, like the Svobodas, "may defend [against an obligee's attempt to enforce the obligation] on any ground which renders the assignment void," *see Reinagel* 735 F.3d at 225 (citation and internal quotation marks omitted). Thus, the Svobodas argue, because the transfer of their mortgage violated the terms of the PSA, they may challenge it in this court as void.

But, the Svobodas' argument does not paint the entire picture of New York law. In spite of the statute that the Svobodas cite, New York courts have treated *ultra vires* actions by trustees as voidable and therefore susceptible of ratification. *See, e.g.*, *Mooney v. Madden*, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993) ("A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement."); *Hine v. Huntington*, 103 N.Y.S. 535, 540 (N.Y. App. Div. 1907) ("We have before this called attention to the fact that the *cestui que trust* is at perfect liberty to elect to approve an unauthorized investment . . . ."); *see also Bank of Am. Nat'l Ass'n v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, 8–10 (Ill. App. Ct. 2012) (collecting cases). "The essence of ratification is that the beneficiary unequivocally declares that he does not regard the act in question as a breach of trust but rather elects to treat it as a lawful transaction under the trust." *In re Levy*, 893 N.Y.S.2d 142, 144 (N.Y. App. Div. 2010) (citation and internal quotation marks omitted).

No. 13-50818

Even when we look to New York law, the violations of the PSA that allegedly took place when the Svobodas' mortgage was transferred to the Trust would merely make such a transaction voidable, not void.  As the Svobodas may not challenge the transfer, *see Reinagel*, 735 F.3d at 228, the district court correctly granted summary judgment for the Appellees on this issue.

**B.  Possession of the Note**

The Svobodas also argue that Bank of America could not foreclose because it did not possess the note.  They cite a number of Texas cases which, they claim, hold that only the original lender or the holder of the note may foreclose.

We recently rejected this argument in *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249 (5th Cir. 2013).  We observed that, under the Texas Property Code, "a 'mortgage servicer' may administer a foreclosure on behalf of a mortgagee if 'the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage,' proper notice is given, and notice discloses that the mortgage servicer represents the mortgagee."  *Id.* at 255 (quoting Tex. Prop. Code § 51.0025).  We also noted that MERS qualifies as a mortgagee under Texas law.  *Id.; see also* Tex. Prop. Code § 51.0001(4) (explaining a mortgagee may include a "book entry system").  Here, MERS, an original beneficiary of the deed of trust, assigned all of its "beneficial interest . . . and all rights accrued or to accrue under [the] Deed of Trust" to BAC, which then properly assigned that interest to Bank of America, so that Bank of America became the mortgagee.  *See* Tex Prop. Code § 51.0001(4) (defining a mortgagee as a "beneficiary, owner, or holder of a security instrument").  As it explained in its letter notifying the Svobodas of the foreclosure, Bank of America was also acting as the mortgage servicer.  *See* Tex. Prop. Code § 51.0001(3) (defining

6

mortgage servicer). In sum, MERS assigned the deed of trust to BAC, which then assigned it to Bank of America—and the deed of trust explicitly includes the authority to foreclose.

The fact that Bank of America did not possess the note does not prevent it from foreclosing. "Where a debt is 'secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations.'" *Martins*, 722 F.3d at 255 (quoting *Aguero v. Ramirez*, 70 S.W.3d 372, 372 (Tex. App.—Corpus Christi 2002, pet. denied)). The note and deed of trust offer "distinct remedies on separate obligations," so the foreclosing party does not have to possess the note when the deed of trust authorizing it to foreclose has been properly assigned. *Id.* (citation and internal quotation marks omitted). We hold therefore that the district court properly granted Bank of America summary judgment.

The Svobodas nevertheless urge us to certify to the Texas Supreme Court the question whether the foreclosing party must possess the note. We have found sufficient sources of Texas law to support our decision in *Martins*, and this case is not so exceptional as to warrant certification. *See Williamson v. Elf Aquitaine, Inc.*, 138 F.3d 546, 549 (5th Cir. 1998) (explaining that one of the most important considerations when deciding whether to certify a question is "the existence of sufficient sources of state law—statutes, judicial decisions, attorney general's opinions—to allow a principled rather than conjectural conclusion" (citation and internal quotation marks omitted)); *see also In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 290 (5th Cir. 2012) ("The court should exercise that discretion sparingly, certifying only in 'exceptional case[s].'" (citation omitted)).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM.