Filed 7/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MOSHE YHUDAI, | B262509 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC495503) |
| v. | |
| IMPAC FUNDING CORPORATION, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

Richard L. Antognini for Plaintiff and Appellant.

Reed Smith, Michael Gerst, Kasey J. Curtis, and Elena Gekker for Defendants and Respondents.

_____

Appellant Moshe Yhudai sued his lender and other parties alleging causes of action arising from the nonjudicial foreclosure sale of his residence. The trial court sustained the respondents' demurrer to Yhudai's second amended complaint without leave to amend and entered a judgment dismissing the case with prejudice.[1] Yhudai appealed. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Yhudai owned a residence in Los Angeles. In February 2007 he borrowed $1,802,500 from Impac Funding, and secured the loan with a deed of trust against the residence. Impac Funding is named as the "lender" and MERS as the "beneficiary." The deed of trust provides that (1) MERS "is acting solely as a nominee for Lender and Lender's successors and assigns" and (2) Yhudai's promissory note, together with the deed of trust, "can be sold one or more times without prior notice to [Yhudai]."

On March 29, 2007, Impac Funding sold Yhudai's promissory note and other promissory notes to a certain securitized investment trust (the ISA Trust). Deutsche Bank is the trustee of the ISA Trust, which was formed under New York law pursuant to a pooling and service agreement (PSA).[2] Under the PSA, in order for a loan to be included in the ISA Trust, it must be transferred into the trust by the "closing date" of March 29, 2007.

More than two years after the ISA Trust's closing date, MERS, as nominee for Impac Funding, recorded an "Assignment of Deed of Trust," purporting to assign to Deutsche Bank, as trustee of the ISA Trust, "[a]ll beneficial interest" under the deed of trust "together with the Promissory Note secured by said Deed of Trust" (the 2009

---

[1] Respondents are IMPAC Funding Corporation (Impac Funding), Mortgage Electronic Registration Systems, Inc. (MERS), Deutsche Bank National Trust Company (Deutsche Bank), as Trustee Under the PSA Relating to IMPAC Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2007-02, and Bank of America, N.A.

[2] A securitized investment trust is created by pooling the loans into a trust and selling to investors the right to receive the mortgage interest and principal payments. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 930, fn. 5 (*Yvanova*).) Terms of the trusts and the rights and obligations of the parties are set forth in a pooling and service agreement. (*Ibid.*)

assignment).  The 2009 assignment is dated August 31, 2009, signed on October 15, 2009, and recorded in Los Angeles County on October 22, 2009.

On February 22, 2012, Deutsche Bank, as trustee for the ISA Trust, recorded a substitution of trustee naming ReconTrust Company, N.A. (ReconTrust) the trustee under the deed of trust.  The same day, ReconTrust recorded a notice of default and election to sell the property pursuant to the deed of trust.  About three months later, ReconTrust recorded a notice of trustee's sale.  On June 15, 2012, ReconTrust conducted a trustee's sale and sold the property to Deutsche Bank, as trustee for the ISA Trust.

In his second amended complaint, Yhudai alleged that the 2009 assignment is void because it occurred after the ISA Trust's closing date, and that Deutsche Bank's and ReconTrust's actions, including the trustee's sale, are void because they are derived from the void 2009 assignment.[3]  He asserted causes of action for:  (1) negligent misrepresentation; (2) slander of title; (3) fraud; (4) quiet title; (5) declaratory and injunctive relief; and (6) violation of Business and Professions Code section 17200. Yhudai sought damages and equitable relief, including orders nullifying and rescinding the foreclosure sale, cancellation of the notice of default and notice of trustee's sale, and a judgment quieting his title to the property.  The trial court sustained the respondents' demurrer to the entire pleading without leave to amend, and thereafter entered a judgment of dismissal.  Yhudai appealed.

---

[3] Yhudai also alleged that the person who signed the 2009 assignment on behalf of MERS was actually an employee of Bank of America, and that the February 2012 substitution of trustee was forged or "robo-sign[ed]," and therefore invalid.  He further alleged that respondents violated the terms of an agreement, or "Consent Judgment," entered into with the United States requiring respondents to offer and facilitate loan modifications to avoid foreclosure, and that respondents failed to comply with that agreement.  On appeal, however, Yhudai makes no argument concerning these allegations and represents that his claims depend upon his allegation that the 2009 assignment is void.  Based on that representation and the absence of relevant arguments, we do not consider these additional allegations.

3

## DISCUSSION

### I.     *Standard Of Review*

On appeal from a judgment after the court sustains a general demurrer without leave to amend, "we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]"  (*Ibid.*)  When the demurrer is sustained without leave to amend, we reverse if "there is a reasonable possibility that the defect can be cured by amendment."  (*Ibid.*)

### II.     *Yhudai's Contention That The 2009 Assignment Is Void.*

In Yhudai's opening brief on appeal, he acknowledged that the viability of his claims, as well as a proposed new cause of action for "wrongful foreclosure," "turns on his ability to challenge" the 2009 assignment.  This challenge is based solely on the premise that the 2009 assignment is void because it occurred after the ISA Trust's closing date, as established in the PSA.

Our Supreme Court addressed a similar contention in *Yvanova*, *supra*, 62 Cal.4th 919.[4]  In that case, the plaintiff secured a loan with a deed of trust against her property. As in the present case, the loan was sold to Deutsche Bank, as trustee for an investment trust.  (*Id.* at pp. 925-926.)  Under the terms of that trust, the closing date for the transfer of loans and trust deeds into the trust was January 27, 2007.  (*Id.* at p. 925.)  Almost five years after that date, in December 2011, the plaintiff's lender executed an assignment of the deed of trust to Deutsche Bank, as trustee of the investment trust.  Deutsche Bank then caused the plaintiff's property to be sold at a foreclosure sale.  (*Id.* at pp. 924-925.)

---

[4] *Yvanova* was decided after the respondents filed their initial brief on appeal. Yhudai discusses and relies on *Yvanova* in his reply brief.  We gave respondents the opportunity to address the effect of *Yvanova* on this case and they filed a supplemental brief in response.

The plaintiff in *Yvanova* alleged that the assignment of her deed of trust into the investment trust was void because it occurred after the investment trust's closing date. (*Yvanova*, *supra*, 62 Cal.4th at p. 925.) The trial court sustained a demurrer to the complaint, and this court affirmed. The Supreme Court reversed, and held that the plaintiff could state a cause of action for wrongful foreclosure if the assignment of the deed of trust "was void, and not merely voidable at the behest of the parties to the assignment." (*Id.* at p. 923.) The court explained that "only the entity holding the beneficial interest under the deed of trust—the original lender, its assignee, or an agent of one of these—may instruct the trustee to commence and complete a nonjudicial foreclosure. [Citations.] If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever [citations], the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure." (*Id.* at p. 935; see *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 564.)

An assignment that is merely *voidable*, by contrast, does not support a wrongful foreclosure action. "California law," the *Yvanova* court explained, "does not give a party personal standing to assert rights or interests belonging solely to others. [Citations.] When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so. A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself." (*Yvanova*, *supra*, 62 Cal.4th at p. 936; see also *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094-1095 (*Glaski*).) Yhudai is such a borrower.

Significantly, *Yvanova* did not consider or decide whether the assignment of the plaintiff's deed of trust to the investment trust after the trust's closing date rendered the assignment void, and not merely voidable; that question was a matter to be determined after remand. (*Yvanova*, *supra*, 62 Cal.4th at pp. 936 & 942.)

5

In his second amended complaint, Yhudai alleged that the 2009 assignment is void under New York law (which he alleged governs the ISA Trust) because it occurred after the closing date specified in the PSA. He asserts that, under *Yvanova*, this allegation is enough to survive the demurrer. We disagree. Although we must accept the truth of Yhudai's *factual* allegations when reviewing the ruling on a demurrer, we are not required to accept the truth of his legal conclusions. (See *Yvanova*, *supra*, 62 Cal.4th at p. 925; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

In opposition to the demurrer, Yhudai relied on *Glaski*, *supra*, 218 Cal.App.4th 1079, to support his assertion that the 2009 assignment is void. In *Glaski*, the plaintiff's loan was pooled with other loans and transferred to an investment trust formed under New York law. (*Id.* at pp. 1083-1084.) Like Yhudai, the plaintiff alleged that a purported assignment of his note and deed of trust to the investment trust was ineffective because the assignment was made after the trust's closing date. (*Id.* at p. 1084.) To determine whether there was "a legal basis for concluding that the trustee's attempt to accept a loan after the closing date would be void as an act in contravention of the trust document" (*id.* at p. 1096), the Court of Appeal looked to a New York statute, which provides: " 'If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust . . . is void.' " (*Ibid.*, quoting N.Y. Est. Powers & Trusts Law § 7–2.4.) In applying this statute, the court relied on a then-recent decision by a New York trial court, *Wells Fargo Bank, N.A. v. Erobobo* (N.Y.Sup.Ct. 2013) 39 Misc.3d 1220(A) [2013 WL 1831799] (*Erobobo I*), which involved a mortgage that had been transferred to an investment trust after the trust closing date. The *Erobobo I* court stated that " 'the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void.' [Citations.]" (*Glaski*, *supra*, at p. 1097, quoting *Erobobo I*, *supra*, 2013 WL 1831799 at *8.)

Based on *Erobobo I* and a bankruptcy court decision that followed *Erobobo I* (*In re Saldivar* (Bankr. S.D.Tex. June 5, 2013, No. 11-10689) 2013 WL 2452699 (*Saldivar*)), *Glaski* concluded that the plaintiff's "factual allegations regarding [the] postclosing date attempts to transfer his deed of trust into the [investment trust] are

6

sufficient to state a basis for concluding the attempted transfers were void." (*Glaski, supra*, 218 Cal.App.4th at p. 1097.)

After *Glaski* was decided, a New York intermediate appellate court reversed *Erobobo I.* (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y.App.Div. 2015) 127 A.D.3d 1176, 1178 (*Erobobo II*).) In rejecting the trial court's view of New York law, the higher court explained that the borrower in that case, "as a mortgagor whose loan is owned by a trust, does not have standing to challenge the [mortgage assignee's] possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the [trust's PSA]." (*Ibid.*) The trustee of the investment trust in that case was thus entitled to summary judgment on its action to foreclose the mortgage. (*Ibid.*)

Subsequent cases have consistently rejected *Erobobo I.* (See, e.g., *In re Jepson* (7th Cir. 2016) 816 F.3d 942, 947 ["New York courts consistently have held that an assignment that fails to comply with the terms of a trust agreement merely is voidable and *not* void"]; *Cocroft v. HSBC Bank USA, N.A.* (7th Cir. 2015) 796 F.3d 680, 690 (*Cocroft*) [rejecting borrower's reliance on *Erobobo I* in light of reversal in *Erobobo II*]; *Ferguson v. Bank of New York Mellon Corp.* (5th Cir. 2015) 802 F.3d 777, 782-783 [based on *Erobobo II*, court construed New York law such that violation of a PSA would render challenged assignment of deed of trust "at most voidable but not void"]; *Rajamin v. Deutsche Bank Nat. Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90 (*Rajamin*) [under New York law, unauthorized acts of trustee of investment trust were "not void but voidable"]; *Butler v. Deutsche Bank Trust Co. Americas* (1st Cir. 2014) 748 F.3d 28, 37, fn. 8 [even before *Erobobo II*, "the vast majority of courts to consider the issue have rejected *Erobobo's* [*I*] reasoning, determining that . . . the acts of a trustee in contravention of a trust may be ratified, and are thus voidable"].) *Saldivar, supra*, the bankruptcy court case *Glaski* cited, has received similar negative treatment. (See *Berezovskaya v. Deutsche Bank Nat. Trust Co.* (E.D.N.Y. Aug. 1, 2014, No. 12 CV 6055(KAM)) 2014 WL 4471560 at *6-7; *Koufos v. U.S. Bank, N.A.* (D.Mass. 2013) 939 F.Supp.2d 40, 57, fn. 2; *In re Stanworth* (Bankr. E.D.Va. 2016) 543 B.R. 760, 777.)

The rejection of *Erobobo I* is based on sound reasoning. Under New York law, unauthorized acts by trustees may generally be approved, or ratified, by the trust beneficiaries. (*Rajamin*, *supra*, 757 F.3d at p. 88; *Mooney v. Madden* (N.Y.App.Div. 1993) 193 A.D.2d 933, 934.) Under *Erobobo I*, however, a stranger to the trust would have standing to assert that the unauthorized transaction is void, thereby giving "the stranger . . . the power to interfere with the beneficiaries' right of ratification." (*Rajamin*, *supra*, at p. 89.) The stranger's right (under *Eroboba I*) to declare a transaction void would thus conflict directly with the beneficiaries' right to ratify the transaction. This conflict is avoided by rejecting *Erobobo I*: Because a trust beneficiary under New York law "retains the authority to ratify a trustee's *ultra vires* act, such as a late transfer[,] . . . the act . . . must not be void; it must merely be voidable." (*Cocroft*, *supra*, 796 F.3d at p. 689.)

Because the decision upon which *Glaski* relied for its understanding of New York law has not only been reversed, but soundly and overwhelmingly rejected, we decline to follow *Glaski* on this point. (See *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 815, fn. 5 (*Saterbak*) [rejecting *Glaski* because "the New York case upon which *Glaski* relied has been overturned"].)[5] Yhudai offers no other authority for his contention. Based on the authorities cited above indicate, a postclosing assignment of a loan to an investment trust that violates the terms of the trust renders the assignment voidable, not void, under New York law. (See also *Morgan v. Aurora Loan Services, LLC* (9th Cir. Mar. 28, 2016, No. 14-55203) 2016 WL 1179733 at *2 ["an act in violation of a trust agreement is voidable—not void—under New York law"].)

---

[5] Our Supreme Court's decision in *Yvanova* approved of *Glaski*'s holding that a plaintiff has standing to assert a cause of action for wrongful foreclosure when "a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void." (*Yvanova*, *supra*, 62 Cal.4th at p. 935.) The Court stated, however, that *Glaski*'s further holding that the assignment of a deed of trust to an investment trust was void because it occurred after the investment trust's closing date was "not before" the Court, and it "express[ed] no opinion as to *Glaski*'s correctness on the point." (*Id.* at pp. 931 & 941.)

The reversal of *Erobobo I* and the judicial response to it occurred after Yhudai filed his second amended complaint and his opposition to the demurrer. Yhudai now contends that New York law is "irrelevant" and "has no role in this case." He points to a choice of law clause in the deed of trust, which provides that the deed of trust is "governed by federal law and the law of the jurisdiction where the property is located," i.e., California.**6** Even if this clause governed the question whether the assignment is void, Yhudai offered no citation to federal or California authority (other than *Glaski*) to support his assertion that the 2009 assignment is void because it was made after the ISA Trust's closing date. We therefore reject it. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [arguments made without "reasoned argument and citations to authority" may be treated as waived].)

Yhudai also contends that he should not have to prove that the 2009 assignment is void; the respondents, he argues, should bear the burden of proving the validity of the 2009 assignment. He cites to cases in which a plaintiff purporting to be the assignee of a contract right had the burden of proving it actually held the contractual right it was suing to enforce. (See, e.g., *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 292; *Neptune Society Corp. v. Longanecker* (1987) 194 Cal.App.3d 1233, 1242.) Here, however, Deutsche Bank has sued no one. Yhudai, as the plaintiff challenging a nonjudicial foreclosure, has the burden to prove it was wrongful. (See *Saterbak*,

---

**6** California law does not support Yhudai's claim. As *Yvanova* stated, "[t]he deed of trust . . . is inseparable from the note it secures, and follows it even without a separate assignment." (*Yvanova*, *supra*, 62 Cal.4th at p. 927; see Civ. Code, § 2936 ["The assignment of a debt secured by mortgage carries with it the security"].) Thus, if the note was timely conveyed to the ISA Trust, as Yhudai alleged, so was the deed of trust. Although the conveyance of the note may have been separated in time from the execution, recording, and physical transfer of the instrument reflecting the assignment of the deed of trust, that gap does not alter the legal fact that the deed of trust and the right to foreclose was, as a matter of law, transferred along with the note. (See *U.S. v. Thornburg* (9th Cir. 1996) 82 F.3d 886, 892 [even if party holding the deed of trust instrument fails "to hand [it] over" to the note holder, the note holder has the right to foreclose].) Under California law, therefore, there is no basis for Yhudai's allegation that the deed of trust was assigned to Deutsche Bank after Deutsche Bank acquired the note.

*supra*, 245 Cal.App.4th at pp. 813-814; *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270, disapproved on another point in *Yvanova*, *supra*, 62 Cal.4th at p. 939, fn. 13.)

Yhudai further contends that language in the deed of trust confers upon him, as the borrower, the right to sue "to assert the non-existence of a default or any other defense . . . to acceleration and sale." Yhudai has not, however, asserted the nonexistence of a default, and his only purported "defense" to foreclosure is that the 2009 assignment is void. As explained above, we reject his legal conclusion that the assignment is void. Even if language in the deed of trust might have provided Yhudai with standing to assert a defense to prevent a foreclosure, it does not help him here. (See *Saterbak*, *supra*, 245 Cal.App.4th at pp. 816-817.)

Yhudai also argues that the deed of trust is an adhesion contract that "does not use conspicuous and clear language to warn [him] that he has no power to challenge an invalid assignment of [his] loan." The problem with Yhudai's claims, however, is not that the deed of trust precludes him from alleging an invalid assignment, but that he has not sufficiently alleged an invalid assignment.

Finally, Yhudai contends that he should be permitted to amend to add a cause of action for wrongful foreclosure. This proposed cause of action, however, is similarly dependent upon the allegation that the 2009 assignment is void because it was made after the ISA Trust's March 2007 closing date. Because he has not alleged sufficient facts to establish that critical allegation, the proposed new cause of action would also fail as a matter of law.

**DISPOSITION**

The judgment is affirmed.  Respondents shall recover their costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


                                                           ROTHSCHILD, P. J.

We concur:



        CHANEY, J.



        LUI, J.

11